UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| W.G. TOMKO, INC. | : | |
| 2559 Route 88 | : | |
| Finleyville, PA 15332 | : | Case No. _____ |
| | : | |
| _Plaintiff,_ | : | |
| | : | Judge _____ |
| v. | : | |
| | : | |
| FRANKLIN COUNTY BOARD OF | : | Magistrate Judge _____ |
| COMMISSIONERS | : | |
| 373 S. High St., First Floor | : | |
| Columbus, OH 43215-4591 | : | **VERIFIED COMPLAINT** |
| | : | |
| | : | **JURY DEMAND ENDORSED HEREON** |
| _Defendant._ | : | |

## JURISDICTION

1.     Plaintiff, W.G. Tomko, Inc. ("Tomko") is a Pennsylvania corporation with its principal place of business in Finleyville, Washington County, Pennsylvania.

2.     Defendant Franklin County Board of Commissioners (the "County") is a governmental subdivision under the law of the state of Ohio, with its principal place of business in Franklin County, Ohio.

3.     The Court has diversity jurisdiction under 28 U.S.C. §1332, as there is complete diversity of citizenship between Defendant and Plaintiff, and the amount in controversy exceeds $75,000.

## STATEMENT OF FACTS

4.     On January 8, 2008, Tomko entered into a Contract with the County to perform the plumbing work in connection with the construction of the Huntington Park Baseball Stadium in

Columbus, Ohio (the "Project").[1]

5.      Under Section 12.2 of the General Conditions of the Contract for Construction (the "Contract"), the County was obligated to provide a "Builder's Risk insurance policy to cover all Work in the course of construction."

6.      Pursuant to the Contract with Tomko and the Contract Documents, the County purchased an all risk, Builder's Risk policy from Affiliated FM Insurance Company (the "Policy"), which insures against all risk of direct physical loss or damage to insured property, including new construction and underground pipes, tanks, flues and drains.  (See Sections A and B(1)(a) and (h)).[2]

7.      The Policy was procured for the benefit of the County and Tomko, among others, and protects the Project work from all risks of direct physical loss, including, but not limited to, fire, theft, vandalism, malicious mischief, earthquake, tornado, flood, collapse, and water damage.

8.      The Policy states that:  "A willful act of destruction committed by employees of the Insured or others …, without the knowledge of the Insured, resulting in physical damage, is covered."

9.      Acts of vandalism and malicious mischief and all loss resulting from that vandalism and malicious mischief, are covered under this Policy language.

10.     Shortly before the stadium opened, leaks from the underground fire sprinkler line were reported on the Project.

11.     These leaks damaged the surrounding soils, threatened to undermine the stability of the overall project, and caused the fire line to fail.

---

[1] The Contract and relevant portions of the General Conditions are attached hereto as **Exhibit A**.  The complete General Conditions are voluminous, and therefore, not attached, but can be supplemented upon request.
[2] The Builders' Risk Policy is attached hereto as **Exhibit B**.

12.     An inspection of the system required Tomko to dig up the fire line, a portion of which was already encased in concrete.

13.     American Leak Detection and several other leak detection firms were brought in to identify and locate the leaks below ground.

14.     These inspections established that all but two of the thirty full-body mechanical joints along the fire line in the area where the pipe changed directions were not tightly bolted, and were intentionally loosened.

15.     These loose bolts allowed water to escape the fire line, thereby causing property damage.

16.     Prior to discovering the leaks, the fire line was preliminarily hydrostatically water tested and inspected and was found to be at acceptable pressure ratings by both the City of Columbus and Turner.

17.     The fire line passed all tests and inspections.

18.     Following the connection of the sprinkler heads to complete the system, a test of the total plumbing system installation was performed, during which it was noted that the system was not able to maintain the required pressure to pass the test.

19.     At some time after the above-referenced successful testing and inspections, the fire line was vandalized.

20.     The fire line could not have passed such stringent testing and inspections had the joints not been tightly secured upon installation.

21.     The bolts became loose after passing the testing and inspections due to vandalism and malicious mischief.

- 3 -

544550v3

22. Likewise, the sanitary waste and vent system, and other portions of the plumbing system installed at the Project were also vandalized, resulting in significant damages and costs.

23. Specifically, the waste and vent system was successfully air tested and then agency inspected throughout construction.

24. Upon completion of this system, including fixtures and final connections, Tomko performed both air and smoke testing.

25. These tests indicated that portions of the system that had previously passed inspection now failed due to vandalism.

26. Similarly, it was discovered that other portions of the plumbing system also had been vandalized (e.g., evidence of broken pipes, concrete in pipes, screw holes drilled in pipes, broken fittings, pipes plugged with plastic caps).

27. As a result of this vandalism and sabotage, in early 2009, Tomko completed extensive repair work, immediately notified the County and Affiliated FM of the loss, and submitted a claim to the County under the Policy.

28. The County was aware of Tomko's claim in early 2009 so that the County, on its own behalf and Tomko's behalf, could make a claim on the Policy for these losses, as required by the Contract.

29. The County did not submit Tomko's claim to Affiliated FM or permit Tomko to pursue the claim on its own behalf for coverage under the Policy until August 2010, 15 months after it was submitted by Tomko.

30. It was not until after Tomko retained counsel and demanded that the claim be submitted, that the claim was finally submitted to Affiliated FM and Tomko was permitted work directly with Affiliated FM in its handling of the claim.

- 4 -

31.     Furthermore, despite ultimately submitting Tomko's claim to Affiliated FM in August 2010, the County failed to cooperate in the investigation of the claim, and improperly and unfairly influenced Affiliated FM into denying Tomko's claim, including, but not limited to, refusing to produce Project documentation and information in its possession, including photographs and surveillance video, requested by Tomko as far back as March 2009.

32.     As a result of the County's failure to cooperate and intentional interference with Affiliated FM's investigation and handling of Tomko's claim, Affiliated FM finally wrongfully denied Tomko's claim on September 22, 2011, more than a year after it was submitted.  The County forwarded the denial to Tomko on October 5, 2011.

33.     Tomko has collected documentary evidence, photographs, and testimony to support its vandalism claim and the resulting property damage.

34.     While the investigation and cost analysis will continue, costs to repair the damage have exceeded $2,000,000.

35.     The County has also failed to respond to Tomko's public records requests for all photographs, videos, meeting minutes, reports and other written documents relating to work completed during construction of the Huntington Park, originally made on March 5, 2009, and made again on March 17, 2009.

### COUNT I – BREACH OF CONTRACT

36.     Tomko incorporates the preceding paragraphs of its Complaint above as if fully rewritten herein.

37.     Under the Contract with Tomko, the County was obligated to provide an "all risk" Builder's Risk Insurance Policy to cover 100% of all Project work during the course of construction.

38.     Such Policy was procured for the benefit of the County and Tomko, among others.

- 5 -

39.     Pursuant to its Contract with Tomko and the Contract Documents, the County purchased the Policy from Affiliated FM Insurance Company, which insures against all risk of direct physical loss or damage to insured property, including new construction and underground pipes, tanks, flues and drains. (See Sections A and B(1)(a) and (h)).

40.     The Policy was procured for the benefit of the County and Tomko, among others, and protects the Project work from all risks of direct physical loss, including, but not limited to, fire, theft, vandalism, malicious mischief, earthquake, tornado, flood, collapse, and water damage.

41.     Further, the Policy states that: "A willful act of destruction committed by employees of the Insured or others ..., without the knowledge of the Insured, resulting in physical damage, is covered."

42.     Acts of vandalism and malicious mischief, and all loss resulting from that vandalism and malicious mischief are covered under this Policy language.

43.     Shortly before the stadium opened in 2009, it was discovered that Tomko's work was vandalized and damaged.

44.     As a direct and proximate result of the vandalism and sabotage and damage to Tomko's work, Tomko was required to complete extensive repair work, and has incurred costs and expenses in excess of $2,000,000 associated with these repairs.

45.     Tomko timely notified the County and Affiliated FM of the loss, and submitted a claim to the County under the Policy.

46.     The County was aware of Tomko's claim in early 2009 so that the County, on its own behalf and Tomko's behalf, could make a claim on the Policy for these losses, as required by the Contract.

- 6 -

544550v3

47.     The County did not submit Tomko's claim to Affiliated FM or permit Tomko to pursue the claim on its own behalf for coverage under the Policy until August 2010, 15 months after it was submitted by Tomko.

48.     Despite ultimately submitting Tomko's claim to Affiliated FM in August 2010, the County failed to prosecute or cooperate in the investigation of the claim, and improperly and unfairly interfered with Affiliated FM's investigation and handling of the claim, with the intent of causing Affiliated FM to wrongfully deny Tomko's claim, including, but not limited to, providing false and misleading information, and refusing to produce Project documentation and public information in its possession, including photographs and surveillance video, requested by Tomko as far back as March 2009.

49.     As a direct and proximate result of the County's failure to prosecute or cooperate, and intentional interference with the investigation of the claim, submitted to the County well over two years ago, Affiliated FM finally wrongfully denied Tomko's claim on September 22, 2011, more than a year after it was submitted by the County. The County forwarded the denial to Tomko on October 5, 2011.

50.     The County has failed to prosecute or cooperate, and intentionally interfered with the investigation of Tomko's claim under the Policy, or otherwise cover the claim as required under the terms and conditions of the Contract.

51.     The County's failure to prosecute or cooperate, and intentional interference with the investigation of Tomko's claim under the Policy, or otherwise cover Tomko's claim, is and has been a continuing breach of the contract.

52.     As a direct and proximate result of its continuing breach of contract, the County is liable to Tomko for the full amount of its claim, which currently exceeds $2,000,000.

- 7 -

53.     Additionally, the County's failure to respond to Tomko's public records requests for all photographs, videos, meeting minutes, reports and other written documents relating to work completed during construction of the Huntington Park, originally made on March 5, 2009, and made again on March 17, 2009, over three years ago, is and has been a continuing breach of the contract, for which Tomko is entitled to recover statutory damages.

### COUNT II – UNJUST ENRICHMENT

54.     Tomko incorporates the preceding paragraphs of its Complaint above as if fully rewritten herein.

55.     Franklin County received the benefit of the labor and material provided by Tomko on the Project, including, but not limited to, Tomko's extensive repair of work that was vandalized and damaged after completion.

56.     Franklin County has received the benefit of Tomko's extra labor and materials provided on the Project under circumstances where it would be unjust for it to retain the same without providing full compensation to Tomko.

57.     As a direct and proximate result, Franklin County has been unjustly enriched in the full amount of Tomko's claim for extra costs and expenses incurred on the Project, which currently exceeds $2,000,000.

58.     As a result of its unjust enrichment, Franklin County owes Tomko the full amount of its claim for extra costs and expenses incurred on the Project, in excess of $2,000,000, as well as its costs and expenses incurred in this action.

WHEREFORE, Plaintiff W.G. Tomko prays for judgment on its claims as follows:

    A.      On Count I, damages against Franklin County in excess of $75,000;

    B.      On Count II, damages against Franklin County in excess of $75,000

- 8 -

C.     Its costs and expenses incurred herein; and

D.     Any such other relief as this Court deems just and equitable.

Respectfully submitted,

Michael V. Passella (0072450)
Peter W. Hahn (0070202)
**Dinsmore & Shohl LLP**
191 W. Nationwide Blvd., Suite 300
Columbus, OH 43215
Telephone: 614.628.6880
Facsimile: 614.628.6890
E-mail: tbonasera@dinslaw.com
E-mail: mpassella@dinslaw.com
**Trial Counsel**
*Attorneys for Plaintiff W.G. Tomko, Inc.*

### JURY DEMAND

Plaintiff W.G. Tomko, Inc. hereby requests a Jury Trial for all issues in this matter so triable.

Michael V. Passella (0072450)

- 9 -

544550v3

## **VERIFICATION**

I, Clyde Rombach, III, was project manager for W.G. Tomko, Inc., Plaintiff in this case, at the Huntington Baseball Stadium.  I declare that the contents of this Verified Complaint are true to the best of my own knowledge except as to such matters stated to be on information and belief, and as to these matters, I believe them to be true.

Executed on this 28th day of September, 2012.

Clyde Rombach, III
Senior Project Manager, W.G. Tomko, Inc.

Sworn to before me and subscribed in my presence this 28th day of September, 2012.

Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Renée Colbert, Notary Public
Union Twp., Washington County
My Commission Expires Oct. 21, 2014
Member, Pennsylvania Association of Notaries

- 10 -